QUALITY FARM AND FLEET, INC., Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9803–TA–17.

Tax Court of Indiana.

March 13, 2001.

Publication Ordered April 24, 2001.

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Quality Farm and Fleet (Fleet), appeals the Final Determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of Fleet's property as of March 1, 1995. Fleet presents various issues for the Court's consideration, which the Court restates as:

I. Whether the State Board exceeded its legislative authority in conducting a hearing in this matter without having issued a letter of appointment or a prescription of duties to its hearing officer;

II. Whether the State Board erroneously denied the application of a negative influence factor to Fleet's land;

III. Whether the State Board improperly refused to apply the General Commercial Kit (GCK) pricing schedule to two areas of Fleet's improvements;

IV. Whether the State Board's application of a D grade to the Main Building was invalid; and

V. Whether the State Board's decision to award no obsolescence adjustment to the Main Building was erroneous.[1]

## FACTS AND PROCEDURAL HISTORY

Fleet owns the subject property, a retail outlet in Warsaw, Indiana. The Kosciusko County Board of Review (BOR) valued Fleet's land at $47,470 and its improvements at $123,200. Disagreeing with this valuation, Fleet filed a Form 131 Petition for Review of Assessment, which the State Board received on August 23, 1996. On October 20, 1997, the State Board conducted an administrative hearing. The State Board issued its Final Determination on January 13, 1998, making no change in the value of Fleet's land and lowering the value of its improvements to $122,500. Fleet filed this original tax appeal on February 27, 1998. The Court conducted a trial on January 29, 1999 and heard oral arguments from the parties on August 6, 1999. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

The Court gives great deference to the State Board's final determinations

---

1. Fleet raises an additional issue: whether the State Board's assessment regulations violate the Indiana Constitution. The fact that the subject property was assessed under an unconstitutional regulation does not mean the assessment will be invalidated on that basis. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id.* *See also Town of St. John v. State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 250–51 (Ind. Tax Ct.2000) (ordering that all real property in Indiana shall be reassessed under new, constitutional rules as of March 1, 2002, and stating that, until then, real property tax assessments shall be made in accordance with the current system). Therefore, the Court will not address this issue.

when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

## Discussion

### I. Hearing Officer's Appointment

█ Fleet contends that the State Board conducted no lawful administrative hearing in this matter, because the State Board never issued a written order of appointment or any written prescription of duties to its hearing officer, Mr. Steven C. Schultz, pursuant to IND.CODE §§ 4–22–5–1 & 6–1.1–30–11. Schultz testified at trial that he received no written order from the State Board assigning him to hear Fleet's administrative appeal. (Trial Tr. at 8.) However, there is no evidence in the record that Fleet objected to the authority of Schultz to hear its appeal. Fleet's silence constituted its acceptance of Schultz's authority to conduct a hearing; it has waived the issue and may not now raise it for the first time on appeal. *Hoogenboom–Nofziger v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1018, 1022 (Ind. Tax Ct.1999).

### II. Negative Influence Factor

█ Fleet claims that the State Board erroneously declined to apply a negative influence factor to its parcel. An influence factor "refers to a condition peculiar to the acreage tract that dictates an adjustment to the extended value to account for varia-

tions from the norm." IND.ADMIN.CODE tit. 50, r. 2.2–4–17(c)(8) (1996). *See also id.*, r. 2.2–4–12 (1996); 2.2–4–1 (Supp.2000). An influence factor is expressed as a percentage increase or decrease in the subject land's assessed value, with the percentage representing the "composite effect of the factor that influences the value." *Id.*, 2.2–4–17(c)(8); *White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 562 (Ind. Tax Ct.1999), *review denied.* "The decision whether to apply an influence factor calls for subjective judgment." *Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 878 (Ind. Tax Ct.1993). In applying an influence factor, an assessing official must first identify the deviations from the norm and then quantify the variations as a percentage. *White Swan Realty*, 712 N.E.2d at 562.

The regulations list seven factors that may be the basis for an adjustment. IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(A)–(G) (1996). Fleet claims that one of these, the "misimprovement" factor, applies to its land. *Id.*, r. 2.2–4–10(a)(9)(E). According to the regulations, a "misimprovement" indicates that a negative adjustment in value to the land in question is warranted. *Id.* "This factor is used when the parcel does not have the same use as surrounding parcels. The base rate is computed based on the predominant use of the surrounding parcels." *Id.*

The State Board's Final Determination states that "After inspecting the parcel . . ., it is determined the land is not misimproved. [Fleet] failed to submit evidence to substantiate the assessment is incorrect." (Joint Ex. 1 at 18.) In order to prove the invalidity of this determination, Fleet was obligated to first identify the alleged deviation from the norm or peculiar condition of the land. To establish a prima facie case that the subject parcel

was misimproved, Fleet needed to submit probative evidence sufficient to show that (1) its parcel did not have the same use as surrounding parcels and (2) the inconsistent usage negatively impacted the subject parcel's value. IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(E). *Cf. Talesnick v. State Bd. of Tax Comm'rs,* 693 N.E.2d 657, 661 (Ind. Tax Ct.1998) (observing that where taxpayers presented evidence that water flowage easement encroached upon their land to a greater extent than it did to other land surrounding reservoir, State Board should have considered whether taxpayers' land was "encumbered by the easement to an extent that application of a negative influence factor is warranted").

As evidence that a negative influence factor should be applied to the subject parcel, Fleet, via its tax representative Landmark Appraisals (Landmark), submitted an "Assessment Review and Analysis" (Review) at the administrative hearing. (Joint Ex. 2.) Landmark's Review stated that the BOR "failed to apply a negative influence factor to the land as required by [IND.ADMIN.CODE tit. 50, r. 2.2–4–10]" and that the "use of surrounding properties is different than the use of the subject property[;] therefore, a decrease based on a misimprovement to the land should be applied." *Id.* at 3. The Review then provides copies of regulations. *Id.* at 5–8. At trial, Landmark's M. Drew Miller testified that the regulations *"require* a decrease in the [subject parcel's] rate based on a misimprovement." (Trial Tr. at 25) (emphasis added.) Miller then testified that the parcels immediately surrounding Fleet's parcel had different uses than the subject parcel. *Id.*

Miller's interpretation of the regulations is mistaken. INDIANA ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(E) requires an assessor to indicate on the property record card a "decrease [in the subject parcel's value]

based on a misimprovement to the land." *See also* IND.ADMIN.CODE tit. 50, r. 2.2–4–17(c)(8). Thus, contrary to Miller's understanding, the regulations do not require an *automatic* downward adjustment in a parcel's value simply because it is used differently than surrounding parcels. Fleet submitted no evidence demonstrating how any alleged inconsistent usage negatively impacted the subject parcel's value. Fleet's argument focuses exclusively on the identification of differing land uses and ignores the need to identify a decrease in value. *See* IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(E). Assuming, without concluding, that Fleet's land use is different from that of surrounding parcels, Fleet was still obligated to produce probative evidence showing how the inconsistent usage decreased the value of its parcel. It did not do so. Therefore, the Court holds that Fleet did not make a prima facie case that the State Board improperly declined to assign a negative influence factor to the subject parcel.

### III. Kit Building

Fleet maintains that the State Board improperly refused to apply the GCK pricing schedule to two areas of its improvements. The areas in question include a 6100 square foot addition (Addition) to the Main Building valued at $95,160 and a 2120 square foot area (Small Shop Area) valued at $43,780. (Joint Ex. 1 at 12 & 13.) The Small Shop Area is part of a larger, 4346 square foot building, and the 2226 square feet (Storage Area) of this second building that is not at issue was apparently priced using the GCK schedule. (Trial Tr. at 17.)

The GCK pricing schedule is used for "valuing preengineered and predesigned pole buildings which are used for commercial and industrial purposes." IND.ADMIN.CODE tit. 50, r. 2.2–10–6.1(a)(1)(D) (1996). Moreover, the GCK schedule "val-

ue[s] the base building on a perimeter area ratio basis and adjust[s] the value based on the various individual components of the building." *Id.* The GCK base rates are located on Schedule A.4 of IND.ADMIN.CODE tit. 50, r. 2.2–11–6 (1996).

## A. Addition

 Landmark's Review asserts that the Addition was assessed as a kit building during the 1989 general reassessment. (Joint Ex. 2 at 3.) However, even if correct, this fact is not probative as to how the Addition should be assessed for the tax year under review. This is because each assessment and each tax year stands alone. *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs*, 568 N.E.2d 1116, 1124 (Ind. Tax Ct.1991) (citation omitted). Thus, the State Board was not bound by its prior assessment of the Addition. Schultz stated that the Addition "had a metal exterior skin which is typical of GCK buildings." (Trial Tr. at 18.) While this is probative evidence, alone it is insufficient to establish a prima facie case that the Addition should be assessed as a kit building. *Cf. Damon Corp. v. State Bd. of Tax Comm'rs*, 738 N.E.2d 1102, 1111 (Ind. Tax Ct.2000) (holding that evidence showing that subject building had tapered columns, Cee channels and cross bracing, per Instructional Bulletin 91–8, established prima facie case that building was eligible for kit building adjustment under prior regulations). Also, the Review has a photograph allegedly showing part of the Addition's exterior. (Joint Ex. 2 at 2.) The photograph's caption simply reads "PHOTO OF SUBJECT PROPERTY." *Id.* Miller testified that this "bottom photograph . . . shows the extension to the rear of the building." (Trial Tr. at 28 .) Neither the photograph's caption nor Miller's testimony explains how the photograph tends to prove that the Addition qualifies as a kit-type building. *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) ("[T]his Court has rejected attempts by taxpayers to put forth evidence such as photographs without explanations.").

## B. Small Shop Area

 With respect to the Small Shop Area, the Review offers the conclusory statement that the BOR "incorrectly priced [the Small Shop Area] from the GCI schedule," and that "it should be priced from the GCK [schedule]." (Joint Ex. 2 at 3.) Conclusory statements are not probative evidence. *CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1019 (Ind. Tax Ct.2000). Because the Small Shop Area allegedly is the "same type construction" as the Storage Area and because the Small Shop Area's "exterior walls . . . meet the GCK requirements," Fleet asserts that the GCK pricing schedule "would be properly applied" to the Small Storage Area. (Pet'r Br. at 9.) Schultz testified that the Small Shop Area had a "metal exterior wall finish, which is *somewhat typical* of [the State Board's] GCK model." (Trial Tr. at 18) (emphasis added.) Contrary to Fleet's contention in its brief, this statement does not show that the exterior walls of the Small Shop Area meet the requirements of the GCK model. While it may have probative value, it does not establish a prima facie case that the Small Shop Area should be assessed using the GCK pricing schedule. *Cf. Damon Corp.*, 738 N.E.2d at 1111.

Fleet was required to submit probative evidence sufficient to establish a prima facie case that the areas in question deserved to be assessed as kit buildings. *See King Indus. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 343 (Ind. Tax Ct.1998). It has not done so here, with respect to either the Addition or Small Shop Area.

## IV. Grade

Fleet asserts that the State Board's assignment of a D grade to its Main Building was invalid. Grade refers to the "classification of an improvement based on certain construction specifications and quality of materials and workmanship." IND.ADMIN.CODE tit. 50, r. 2.2–1–30 (1996). To meet its burden of production on this issue, Fleet had to produce probative evidence sufficient to establish a prima facie case as to its claim. *CDI,* 725 N.E.2d at 1019. The Review contains the following statement as to grade:

> The BOR failed to properly account for the significant inferiorities and lack of features in the subject building when compared with the general retail model. The subject lacks the interior finish that is described in the General Retail model, lacks any kind of exterior windows and lacks exterior attractiveness. A grade of D—1 should be applied to account for these differences.

(Joint Ex. 2 at 3.) At the administrative hearing, Miller testified that the Main Building differed from the General Retail model, *see* IND.ADMIN.CODE tit. 50, r. 2.2–11–1(34) (1996), with respect to its "interior finish," "exterior windows," and "exterior tracking." (Joint Ex. 3.) This was the extent of his testimony before the State Board on the grade issue. Although Fleet presented additional evidence at trial, the Court may not consider evidence that was not presented at the administrative hearing. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied; State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1328 (Ind.Ct.App.1981).

Fleet wants to account for its building's alleged deviations from the General Retail model by lowering the Main Building's grade from a D to a D–1, which would lower the building's base value by ten percent. IND.ADMIN.CODE tit. 50, r. 2.2–11–7 (1996) (Schedule F). Under some circumstances, an improvement's deviation from the model used to assess it may be accounted for via a grade adjustment. *Whitley Prods.,* 704 N.E.2d at 1117. *Cf. Clark v. State Bd. of Tax Comm'rs,* 742 N.E.2d 46 (Ind. Tax Ct.2001) ("Use of objective adjustments [for grade] is preferable and must be done where the base rate adjustment and/or unit-in-place tables permit the deviations' values to be reasonably calculated."). However, Fleet's testimony and exhibits do not explain how or to what extent the Main Building's features deviate from the model, why the alleged deviations justify a ten percent downward adjustment in the building's base value or why a subjective (as opposed to objective) adjustment is appropriate.

This evidence is insufficient to establish a prima facie case as to grade. The Review is not helpful. Its statements as to the Main Building's interior finish and level of attractiveness are conclusory and therefore not probative as to grade. *CDI,* 725 N.E.2d at 1019. Miller's testimony before Schultz at the administrative hearing was likewise conclusory. His three examples of deviations do not tend to show whether a D–1 grade is more appropriate than a D grade. The only evidence that may be considered probative as to grade is the Review's statement that the Main Building lacked exterior windows. However, even this fact works against Fleet. The GCM General Retail model lists the following for "Openings": "1% 1¾ [inch] hollow metal service doors." IND.ADMIN.CODE tit. 50, r. 2.2–11–1(34). The model mentions nothing about windows; therefore, a lack of windows in the Main Building actually comports with the model used to assess it.

### V. Obsolescence

■ Finally, Fleet contends that the State Board's decision to award its Main Building no obsolescence adjustment was erroneous. (Joint Ex. 1 at 18.) Pursuant to the State Board's regulations, obsolescence, which is a form of depreciation, "means a diminishing of a property's desirability and usefulness brought about by either functional inadequacies or overadequacies inherent in the property itself, or adverse economic factors external to the property." IND.ADMIN.CODE tit. 50, r. 2.2–1–40 (1996). "Functional obsolescence" is defined as "obsolescence caused by factors inherent in the property itself." *Id.*, r. 2.2–1–29 (1996). "Economic obsolescence" is described as "obsolescence caused by factors extraneous to the property." *Id.*, r. 2.2–1–24 (1996). *See also* IND.ADMIN.CODE tit. 50, r. 2.2–10–7(e) (1996) (listing causes of functional and economic obsolescence). Obsolescence is expressed in terms of a percentage reduction from the subject property's value; the obsolescence deduction can range from 0% to 95%. IND.ADMIN.CODE tit. 50, r. 2.2–10–7(f) (1996).

■ The determination of obsolescence is a two-step inquiry. *Freudenberg–NOK v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029 (Ind. Tax Ct.1999), *review denied.* Assessing officials must first identify the causes of obsolescence and then quantify the amount of obsolescence to be applied. *Id.* To clear the first hurdle, a taxpayer must provide the State Board with probative evidence sufficient to establish a prima facie case as to the causes of obsolescence. *White Swan Realty*, 712 N.E.2d at 560. However, Fleet stumbles in its attempt to overcome this barrier. With respect to obsolescence, the Review provides:

> The BOR failed to properly apply obsolescence depreciation to account for the loss in value due to various causes of obsolescence including, but not limited to, the obsolete flat composition roof construction problems and inefficiencies caused by the add-on construction. To properly adjust for this loss in value, 20% obsolescence depreciation is recommended.

(Joint Ex. 2 at 3.) Miller's testimony before the State Board is virtually identical to this statement. (Joint Ex. 3.) Fleet highlights these two purported causes of obsolescence, i.e., the "add-on construction and [ ] flat roof design," in its brief to the Court. (Pet'r Br. at 11.) Fleet argues that that these features would not be rebuilt today. *Id.* (citing Trial Tr. at 19, 34 & 35.)

Fleet does not explain how either the add-on construction or a flat roof design qualifies as a cause of obsolescence in the present case. While Schultz did testify that builders constructing a new improvement would not typically "immediately add on to it," he stated that "some [structures are added on to] more effectively than others." (Trial Tr. at 19.) Thus, add-on construction does not automatically equate with a structure's loss in value. Likewise, the presence of a flat roof, whether or not it would be reproduced in a building today, does not automatically qualify as a cause of obsolescence. Conclusory statements such as Fleet's lack probative value. *CDI*, 725 N.E.2d at 1019. Fleet identified no other purported causes of obsolescence. Fleet has failed to make a prima facie case that its improvements suffer from either functional or economic obsolescence.

### CONCLUSION

Fleet has failed to present probative evidence sufficient to establish a prima facie case as to any of the issues that it has raised in this original tax appeal. Consequently, its challenges on these issues fail.

Furthermore, because no prima facie case was made, the State Board was not obligated to support its Final Determination as to the challenged issues with substantial evidence. *Whitley Prods.*, 704 N.E.2d at 1119–20. For the aforementioned reasons, the State Board's final determination is AFFIRMED in all respects.

## ORDER

Respondent, State Board of Tax Commissioners, by counsel, files its Motion for Publication of Memorandum Decision.

No response or objection has been filed by the Petitioner.

The court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion for Publication of Memorandum Decision" is granted and this court's opinion heretofore handed down in this cause on March 13, 2001, marked "Not for Publication" is now ordered published.