Ronald D. CLARK d/b/a The
Arches, Petitioner,

v.

## DEPARTMENT OF LOCAL GOVERNMENT FINANCE,[1] Respondent.

### No. 49T10–9808–TA–103.

Tax Court of Indiana.

Dec. 17, 2002.

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. Pub.L. No. 198–2001, § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001); Pub.L.

No. 198–2001, §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001) (eff. 2002); Pub.L. No. 198–2001, § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. *See also* Pub.L. No. 198–2001, § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

David L. Pippen, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for the Respondent.

FISHER, J.

Ronald D. Clark (Clark) challenges the State Board of Tax Commissioners' (State Board) March 1, 1993 assessment of his two apartment buildings. The Court finds that the dispositive issues are:

I. Whether Clark presented a prima facie case showing the proper grade for his apartment buildings; and

II. Whether Clark quantified the obsolescence depreciation he sought for his apartment buildings.[2]

For the reasons given below, the Court AFFIRMS the State Board's May 31, 1996 final determination on these issues.

## FACTS AND PROCEDURAL HISTORY

This case arrives back in this Court from a previous remand to the State Board. *See Clark v. State Bd. of Tax Comm'rs* 694 N.E.2d 1230 (Ind. Tax Ct.1998) (*Clark I*). In that case, Clark initiated an original tax appeal from the State Board's final determination in which it valued his two apartment buildings (the "Woods Property" and the "Salisbury Property") for the March 1, 1993 assessment. In the final determination, the State Board assigned the properties a grade of C and 5% obsolescence.

In 1996, Clark appealed the final determination to this Court. At his trial, Clark presented a prima facie case showing that the C grade was excessive and improper and that the State Board had failed to quantify its award of 5% obsolescence to both apartment buildings. Accordingly, the Court remanded this case to the State Board for further proceedings so that Clark could present evidence showing what the grade of his apartments should

---

2. Clark also argues that the State Board's final determination is void in its entirety because the State Board never issued a written order of appointment for the hearing officer. Because Clark never objected to the hearing officer's authority at the administrative level, Clark has waived this issue. *See Quality Farm and Fleet, Inc. v. State Bd. of Tax Comm'rs*, 747 N.E.2d 88, 91 (Ind. Tax Ct.2001). Clark also attacks the sufficiency of the State Board's written findings; the Court, however, discerns no defect that would war-

rant reversal of the State Board's final determination. Finally, Clark argues that the State Board's rules lack ascertainable standards and violate the Indiana Constitution. As the Court has repeatedly stated, these arguments are not grounds for reversing a final determination of the State Board. *See, e.g., id.* at 90 n. 1 (indicating that until the March 1, 2002 property tax rules are in place, facial challenges to Indiana's property tax laws will be rejected).

have been and to quantify his request for obsolescence depreciation.

Following a remand hearing, the State Board issued a second final determination on Clark's assessment, raising the grade of his apartments to a C+1 and removing its original award of 5% obsolescence. Clark again initiated an original tax appeal and a trial was held on January 20, 1999. Oral arguments were held on August 6, 1999. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Walker Mfg. Co. v. Dep't of Local Gov't Fin.*, 772 N.E.2d 1, 4 (Ind. Tax Ct.2002). This Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

■ Furthermore, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Id.* The taxpayer must present a prima facie case by submitting probative evidence, i.e., evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Id.* "Once the taxpayer carries the burden of establishing a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence." *Clark I*, 694 N.E.2d at 1233.

### Discussion

### I. Grade

■ The first issue is whether Clark presented a prima facie case as to what the correct grade should have been for his apartments. Clark argues that the State Board failed to provide a basis for its grade determination. Clark, however, is mistaken as to which party had the burden on remand.

In general, every improvement's materials, design, and workmanship are collectively assigned a grade from A to E, which represents a numeric multiplier that may raise or lower an improvement's assessment. *Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d 259, 265 (Ind. Tax Ct.2002). The "C" grade is given to "[m]oderately attractive buildings constructed with average quality materials and workmanship throughout[.]" IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992).

■ When challenging grade, a taxpayer may either submit probative evidence showing (1) that the grade given to its improvement by the State Board was improper or (2) what the proper grade for his improvement should have been. *Deer Creek*, 769 N.E.2d at 265–66. In *Clark I*, Clark submitted probative evidence showing that the C grade given to his two apartment buildings was improper. *Clark I*, 694 N.E.2d at 1236, 1242. Because Clark made a prima facie case as to *whether* his apartments had received the proper grade, he necessarily raised the issue of *what* the proper grade should be. When a taxpayer raises an issue, the burden is on the taxpayer to make a prima facie case regarding that issue. *See id.* at 1234 (holding that "[w]hat the *taxpayer* must demonstrate . . . depends on the issues raised by the [taxpayer's] challenge" (emphasis added)). Thus, Clark—not the State Board—had the burden of proof as to this issue on remand.

On remand Clark only submitted evidence showing that the C grade given to his apartments was excessive and improp-

er. However, Clark had *already* made that case. On remand, Clark was supposed to move forward and show what his grade should have been. Instead, Clark stood still. Clark admits that he presented no evidence to show what grade his two apartment buildings should have received. (Oral Argument Tr. at 19.) As a result, he failed to make a prima facie case as to grade.

 The State Board, on the other hand, rather than deny relief to Clark for failing to make a prima facie case, increased Clark's grade to a C+1. "Upon remand the state board of tax commissioners may take action only on those issues *specified* in the decision of the tax court." IND.CODE § 6–1.1–15–8(a) (emphasis added). Nothing in this Court's remand order specified that the State Board should raise Clark's grade; its attempt to do so here is void.

The Court's opinion in *Clark I* was to serve as a North Star to guide Clark and the State Board across a sea of property tax law. But Clark never got his ship out of port, and the State Board sailed its ship right off the map. This is a decade-old case in which there has been a terrific expenditure of public and private resources. The Court feels constrained by these events to take reasonable steps against their occurring again.

The "procedure and practice in all actions jurisdictionally cognizable in the Indiana Tax Court ... shall ... secure the

just, speedy and inexpensive determination of every action." Ind. Tax Court Rule 1 (2002). Given the procedural history of this case, the Court believes that it will "secure the just, speedy and inexpensive determination" of actions involving issues of grade if a taxpayer who challenges the assessment of grade is required to present a prima facie case at the administrative level showing *what* the correct grade assessment should be. Therefore, going forward, this Court will not consider taxpayer complaints concerning grade unless the taxpayer asserts *what* his grade should have been and submits probative evidence to support that claim at the administrative level.[3] *Cf. Clark I,* 694 N.E.2d at 1241–42 (holding that a taxpayer must now identify and quantify obsolescence at the administrative level before his case is heard in this court).

Because Clark failed to make a prima facie case showing what the correct grade of his two apartment buildings should have been, the Court AFFIRMS the State Board's original final determination of a C grade for both apartment buildings.

## II. Obsolescence

 The second issue is whether Clark presented a prima facie case on remand quantifying the amount of obsolescence to be applied to his apartments. Clark argues that the State Board failed to deal meaningfully with his evidence of obsolescence.[4] Again, Clark is mistaken.

---

3. Clark made a prima facie case that his grade should be lowered. On remand, the State Board raised it. The State Board's act made winning in this Court more costly for Clark than losing. However, because a taxpayer must now declare and prove at the administrative level the proper grade his improvement should have received, the likelihood of these events being repeated is negated.

4. Nowhere in Clark's brief does he specify how much obsolescence should be given to his apartments. Rather, he merely claims that he is entitled to obsolescence and then refers the Court to the record. It is the taxpayer's duty to walk the Court through every element of the analysis. If the analysis is quantification of economic or functional obsolescence, then the taxpayer must carefully, methodically, and in detail brief this Court as to what the amount of obsolescence should be

■ Obsolescence is the functional or economic loss of property value. *Clark I*, 694 N.E.2d at 1238. "Functional obsolescence is caused by factors internal to the property and is evidenced by conditions within the property." *Id.* (citations and internal quotation marks omitted). "Economic obsolescence is caused by factors external to the property." *Id.* Clark fails to distinguish between economic or functional obsolescence in his brief. The two types of obsolescence are not synonymous. Accordingly, in all cases where the Indiana Board of Tax Review holds a hearing on a taxpayer's claim of obsolescence after the date of this case, taxpayers are required to *specify* whether they are seeking economic or functional obsolescence, or both. The Court will not accept creative ambiguity that leaves it to the taxing authorities or this Court to determine what type of obsolescence is being sought and whether the evidence identifies and quantifies it. *See Davidson Industries v. Indiana State Bd. of Tax Comm'rs*, 744 N.E.2d 1067, 1071 (Ind. Tax Ct.2001) (holding that the Court will not make a taxpayer's case for it); *see also Clark I*, 694 N.E.2d at 1241 (holding that taxpayers must identify and quantify obsolescence to make a prima facie case).

In *Clark I*, this Court found that the State Board's explanation that it had awarded 5% obsolescence to Clark's Woods Property because of fire code violations was not supported by substantial evidence. *Clark I*, 694 N.E.2d at 1240–41.

Likewise, the Court found that the State Board had not provided substantial evidence supporting its 5% obsolescence depreciation adjustment to Clark's Salisbury Property. *Id.* at 1243. Nevertheless, the initial burden of quantifying obsolescence on remand belonged to Clark, not to the State Board. *See id.* at 1241 n. 17.

At the second trial in this matter, Clark's appraiser testified that he could not quantify the obsolescence for the Salisbury Property. (Trial Tr. at 37.) As for the Woods Property, the appraiser—considering persistent fire code violations—estimated the rent loss for twelve units [5] at $100 per month based on the assumption that Clark could only rent the units as one-bedrooms, not as two bedrooms. (Trial Tr. at 34.) The $100 figure was merely Clark's estimate, itself based on another estimate of "what other two bedrooms might be renting for versus one bedrooms." (Trial Tr. at 35.) Clark's appraiser then calculated that twelve of Clark's units were losing $14,000 per year and, capitalizing that at a rate of 10%, determined a loss of $144,000. (Trial Tr. at 35.) Finally, Clark's appraiser took the $144,000 as a percentage of the remainder value of the Woods Property [6] and concluded that the property should receive a 41% obsolescence depreciation adjustment. (Trial Tr. at 35; Joint Ex. D at 5.)

■ The Court need not address the validity of Clark's capitalization of loss. His initial assumptions and estimates as to

and why. The Court will no longer accept arguments in a brief that (1) generically claim without explanation that the taxpayer made a prima facie case then (2) cite to large swathes of the record as though the evidence speaks for itself. "[T]his Court will not make a taxpayer's case for it." *Davidson Industries v. Indiana State Bd. of Tax Comm'rs*, 744 N.E.2d 1067, 1071 (Ind. Tax Ct.2001) (internal quotation marks omitted). In the future, the Court will dismiss such arguments.

5. The record indicates that the Woods Property has more than twelve units, but Clark's brief does not specify the exact number.

6. Clark's appraiser did not, however, specify the value of the Woods Property in his testimony.

rent loss are without any evidentiary basis, estimated simply on what he thought other unspecified apartments might lose in rent in similar circumstances.[7] An assumption based on an estimate based on an unsubstantiated guess is the pinnacle of conclusory evidence; this Court will not accept it as support for a taxpayer's claim. *See Walker Mfg.*, 772 N.E.2d at 7. Clark has submitted no probative evidence quantifying obsolescence. Thus, he has failed to present a prima facie case on this issue.

 This, however, does not end the issue, because the State Board again on remand launched into a reassessment of Clark's property, removing in its entirety the 5% obsolescence adjustment it had originally given to Clark's two apartment buildings. Nevertheless, the State Board on remand could "take action only on those issues *specified* in the decision of the tax court." I.C. § 6–1.1–15–8(a) (emphasis added). This Court remanded the issue of obsolescence so that Clark could make a prima facie case quantifying the amount of obsolescence to which he was entitled. *Clark I*, 694 N.E.2d at 1241 n. 17. Thus, the State Board was limited to rebutting Clark's prima facie case if he made one. Clark did not make a prima facie case; therefore, the State Board's attempt to alter the 5% obsolescence adjustment on remand—regardless of any supporting evidence it submitted—is void.

Clark did not make a prima facie case as to the Salisbury Property and has failed to make one as to the Woods Property. Accordingly, the Court AFFIRMS that State Board's original final determination on Clark's obsolescence of 5%.

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the State Board's May 31, 1996 final determination on Clark's assessment as to both grade and obsolescence.

---

7. Clark submitted partial rent rolls for 1993 that included rents from units suffering fire code violations as well as rents from units not affected by such violations. The rolls, however, showed no difference in rent between the two classes of apartments and so could not reasonably be relied upon to determine the accuracy of Clark's estimates. (*See* Trial Tr. at 57–58.) At oral argument, Clark claimed to have submitted other evidence quantifying obsolescence; if he did submit such evidence, he either failed to cite to it in his brief, or he failed in his brief to articulate a cogent argument based on such evidence, or both. *See Davidson*, 744 N.E.2d at 1071 (holding that the Court will not make a taxpayer's case for it). Furthermore, Clark's appraiser testified that the fire code violations alone formed the crux of his obsolescence analysis. (Trial Tr. at 34.)