**INDIANAPOLIS RACQUET CLUB, INC., Petitioner,**

v.

**WASHINGTON TOWNSHIP (MARION COUNTY) ASSESSOR, Respondent.**

No. 49T10–0206–TA–61.

Tax Court of Indiana.

Feb. 6, 2004.

Transfer Denied May 21, 2004.

Stephen E. DeVoe, B. Keith Shake, Henderson Daily Withrow & DeVoe, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Indianapolis Racquet Club, Inc. (IRC), appeals from a final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the 1995 assessment year. The sole issue for the Court's review is whether the Indiana Board erred in valuing IRC's land.

## FACTS AND PROCEDURAL HISTORY

IRC owns and operates a commercial tennis club in Washington Township, Marion County, Indiana. IRC's facility is located between 79th Street and 82nd Street, on Dean Road, in Indianapolis.

In accordance with Indiana Code § 6-1.1-4-13.6 (1993), the Marion County Land Valuation Commission and the State Board of Tax Commissioners (State Board) promulgated a land order for use by Marion County assessing officials for the 1995 general reassessment. Under that land order, the Washington Township Assessor valued IRC's "primary" land at $4.80 per square foot and its "secondary" land at $3.36 per square foot.[1]

Believing these values to be too high, IRC filed an appeal with the Marion County Board of Review (BOR). IRC received no relief at the county level. Consequently, IRC filed an appeal with the State Board. The State Board held a hearing on IRC's appeal on August 16, 2001. On April 17, 2002, the Indiana Board[2] issued a final determination in which it made no change to IRC's land values.

IRC filed an original tax appeal on June 3, 2002. The Court heard the parties' oral arguments on October 27, 2003. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court gives great deference to final determinations of the Indiana Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court may reverse a

---

1. For the 1995 assessment, commercial and industrial land was classified according to its use. IND. ADMIN. CODE tit. 50, r. 2.2–4–17 (1996). Consequently, "primary commercial or industrial land" refers to the primary building or plant site, whereas "secondary commercial or industrial land" refers to land utilized for purposes secondary to the primary use of the land. IND. ADMIN. CODE tit. 50, r. 2.2–4–1(18), (19) (1996).

2. On December 31, 2001, the legislature abolished the State Board of Tax Commissioners (State Board). 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. IND.CODE §§ 6–1.5–1–3; 6–1.5–4–1; 2001 Ind. Acts 198 § 95. Thus, when a final determination was issued on IRC's appeal in April 2002, it was issued by the Indiana Board.

final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33–3–5–14.8(e)(1)–(5) (West Supp.2003). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs., L.P.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

## DISCUSSION

In 1995, land values were determined through the application of land orders. IND. ADMIN. CODE tit. 50, rr. 2.2–4–2, –6 (1996). The land orders were developed by collecting and analyzing comparable sales data for given areas. *See* IND.CODE § 6–1.1–31–6(a) (West 2000) (amended 2002). *See also State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc.,* 743 N.E.2d 247, 251 (Ind.2001). More specifically, each county had a land valuation commission that collected and analyzed sales data on non-agricultural (i.e., residential, commercial, and industrial) land within the county and, on the basis of that data, recommended a range of values for property in certain areas. *See* IND. ADMIN.CODE tit. 50, r. 2.2–4–5 (1996). These values were either accepted or modified by the State Board, without further input from the county commissions. *See* IND. CODE § 6–1.1–4–13.6 (West 1989) (amend-

ed 1993); IND. ADMIN. CODE tit. 50, r. 2.2–4–3(a) (1996). The State Board's final figures were then compiled in a county land valuation order.

 The land values contained within a land order are typically expressed in ranges of "base rates" that are applied to various geographic areas, subdivisions, or neighborhoods based on distinguishing characteristics or boundaries. IND. ADMIN. CODE tit. 50, r. 2.2–4–4(c) (1996). Consequently, properties within each geographic area, subdivision, or neighborhood in a land order are presumed to be comparable, both in distinguishing characteristics and market value. *See Indianapolis Racquet Club,* 743 N.E.2d at 251–52 (Ind.2001).

Sometimes, "[h]owever, properties often pos[s]ess peculiar attributes that do not allow them to be lumped with each of the surrounding properties for purposes of valuation." *Phelps Dodge v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1099, 1105 (Ind. Tax Ct.1999), *review denied.* Consequently, the assessment regulations provide for the use of "influence factors" to adjust, either upward or downward, the value placed on a piece of property by the land order. An influence factor "refers to a condition peculiar to the lot that dictates an adjustment to the extended value to account for variations from the norm[,]" and is expressed as a percentage increase or decrease in the subject land's assessed value, with the percentage representing the "composite effect of the factor that influences the value." IND. ADMIN. CODE tit. 50, r. 2.2–4–10(a)(9) (1996); IND. ADMIN. CODE tit. 50, r. 2.2–4–17(c)(8) (1996). Indiana's assessment regulations list seven factors that may be the basis for influence factor adjustment. *See* IND. ADMIN. CODE tit. 50, r. 2.2–4–10(a)(9)(A)–(G) (1996). One of these factors, titled "misimprovement," indicates that a negative adjustment to the land is warranted because "the parcel does

not have the same use as surrounding parcels. The base rate is computed based on the predominant use of the surrounding parcels." 50 IAC 2.2–4–10(a)(9)(E).

The Marion County Land Order (Land Order) at issue in this case divided Washington Township into 11 general geographic areas. (*See* Cert. Admin. R. at 228–32.) IRC's property fell within "Area D," which was bordered by Keystone Avenue on the west, 79th Street on the south, the Washington/Lawrence township line on the east, and 96th Street on the north. (Cert. Admin. R. at 230.) All primary land within "Area D" was valued between $4.80 and $5.10 per square foot, and all secondary land within that area was valued between $3.36 and $3.57 per square foot. (*See* Cert. Admin. R. at 228.)

IRC argues that these land values are invalid. IRC does not assert, however, that the Land Order, or the base rates contained therein, is invalid per se. (*See* Pet'r Reply Br. at 6–7.) Rather, IRC contends that the application of the Land Order to its property is invalid. More specifically, IRC argues that, as a result of mere geographic location, its tennis facility, the only one in "Area D," is lumped in with the noncomparable "high value retail properties" that predominate "Area D." (Pet'r Br. at 4.) Consequently, IRC claims that a "misimprovement" influence factor should be applied to its land.[3]

To establish a prima facie case that the subject parcel is "misimproved," IRC must make a two-pronged showing. *See Quality Farm and Fleet, Inc. v. State Bd. of Tax Comm'rs,* 747 N.E.2d 88, 92 (Ind. Tax Ct.2001). First, IRC must submit probative evidence sufficient to show that its parcel did not have the same use as surrounding parcels. *See id.* Second, IRC must submit probative evidence sufficient to show that the inconsistent use negatively impacted its land's value. *See id.*

The only evidence presented by IRC to establish its prima facie case was the transcript of the Tax Court hearing conducted on its 1989 appeal of the same parcel, (*see* Cert. Admin. R. at 98–227,) and the scant testimony of its President, Stephen DeVoe:

> This appeal is similar to the appeal filed with respect to the 1989 land assessment for this parcel. Accordingly, the transcript of the hearing [conducted on the 1989 appeal] is [submitted as evidence in this hearing on the 1995 appeal].

> The only difference between the 1989 assessment appeal and this one is that there is a new 1995 County Land Order [that] applies to this assessment. The 1995 County Land Order is similar to the 1989 Order in that it is a mass appraisal order. Like the 1989 Order, the 1995 [O]rder establishes classifications but unlike the 1989 Order these

---

**3.** Actually, IRC does not ask for an influence factor per se. Rather, it merely asserts that the appropriate rate to be applied to its land is $2.40 for "primary" land and $1.68 for "secondary" land. (Cert. Admin. R. at 60.) (*See also* Pet'r Reply Br. at 8.) Given the fact that 1) the application of an influence factor is the only way by which the value of IRC's land can be reduced under this Land Order; and 2) a "misimprovement" influence factor most accurately reflects IRC's argument, this Court construes IRC's request as one for the application of a "misimprovement" influence

factor. *But cf. State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc.,* 743 N.E.2d 247, 252–53 (Ind.2001) (explaining that under the 1989 Marion County Land Order, instead of seeking an influence factor, a "catch-all" provision titled "Township–Other" allowed taxpayer to receive a reclassification of—and reduction to—its land value; such a provision does not, however, exist in this case). If IRC did not intend this result, then the Court reminds IRC to be more specific in presenting its argument to the Court.

classifications are based solely on location.

\* \* \* \* \* \*

[As IRC established in its 1989 appeal, t]his parcel differs materially from the surrounding properties with respect to significant factors and its use for other purposes is substantially limited by its zoning. Further, the usage had been established long before the surrounding areas and it is a low intensity, special commercial usage.

\* \* \* \* \* \*

[T]he rates actually used for these unusual properties in the past have been far less than those applied to more highly developed properties which surround this property. Further, the difference in the commercial use between this property and the other commercial properties with which it is grouped in the 1995 Order is a big difference in use. Accordingly, [IRC] believes that the appropriate rate should be approximately 50% of the base rate for the surrounding properties[.]

(Cert. Admin. R. at 233–34.)

■ In essence, IRC believes that the transcript of the hearing on its 1989 appeal supports its claim that, for 1995, its parcel did not have the same use as surrounding parcels. The use of this evidence, however, is flawed for two reasons. First, this Court has rejected attempts by taxpayers to put forth evidence, such as photographs, calculations, or assessment rules, without an explanation. *See, e.g., Heart City Chrysler v. State Bd. of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind. Tax Ct.1999). Similarly, this Court will not accept a tran-

script from another hearing with the mere statement that it "makes our case." Rather, IRC was required to make a careful, methodical, and detailed factual presentation to both the Indiana Board and this Court. *See Clark v. State Bd. of Tax Comm'rs,* 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct.2002). In other words, IRC was required to go through the transcript from the 1989 hearing and indicate what parts supported its current position and how. *See id.* (stating that it is the taxpayer's duty to walk the Indiana Board, as well as this Court, through every element of the analysis; arguments that (1) generically claim without explanation that the taxpayer made a prima facie case and (2) cite to large portions of the record as though the evidence speaks for itself do not constitute probative evidence).

IRC's evidence is also flawed because it deals with a tax year not in question here. In this Court, each tax year, and each appeals process, stands alone. *Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 805 n. 14 (Ind. Tax Ct.1998). While the 1989 hearing transcript shows that IRC's land was not grouped with comparable parcels when it was classified in the "82nd Street Corridor" provision of the 1989 Marion County Land Order, *see Indianapolis Racquet Club,* 743 N.E.2d at 252, it does not necessarily show that IRC's land was improperly classified in the "Area D" provision of the 1995 land order. Indeed, under the 1989 land order, the "82nd Street Corridor" provision was fairly narrow in terms of its geographic boundaries.[4] Under the 1995 land order, however, "Area D" not only encompasses the former "82nd Street Corridor" classification, but extends its borders to the

---

4. The "82nd Street Corridor" provision of the 1989 Marion County Land Order encompassed those properties located between "Allisonville Road W. to Keystone on [82/]86th St. fr Dean Rd. Keystone No. to I–465 Interch fr

86th St." *Indianapolis Racquet Club, Inc. v. State Bd. of Tax Comm'rs,* 722 N.E.2d 926, 930 (Ind. Tax Ct.2000) (footnote omitted), *rev'd on other grounds by* 743 N.E.2d 247 (Ind.2001).

Washington Township boundaries. *See supra.* As a result, "Area D" is a much larger, more developed, and more diverse land grouping than its predecessor, the "82nd Street Corridor."

To show that the transcript on the 1989 appeal is applicable to its 1995 appeal, IRC was required to do more than say "the facts haven't changed from 1989." Rather, it was required to make an affirmative showing that evidence demonstrating that its property did not properly fall within the "82nd Street Corridor" provision under the 1989 Marion County Land Order also demonstrates that its property does not fall within the much larger, more developed, and more diverse "Area D" of the 1995 Land Order. Without this explanation or comparison, neither the transcript nor the testimony supports IRC's case. *See Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind. Tax Ct.1995) (stating that "[a]llegations, unsupported by factual evidence, remain mere allegations"). Therefore, the Court finds that IRC has failed to establish that its land's use is different from surrounding parcels for the 1995 assessment year.

■ Assuming (for argument's sake only) that IRC has shown its land use is different from that of the other parcels included in "Area D", IRC was still obligated to produce probative evidence showing how its inconsistent use decreased the value of its parcel. It did not. In fact, all IRC has done is tell the Indiana Board that its land has a different use and then say "as a result, we're entitled to a 50% adjustment." However, IRC needed to link one with the other by showing an *actual* loss of value. *See Quality Farm and Fleet*, 747 N.E.2d at 92. In other words, IRC needed to submit evidence demonstrating how the alleged inconsistent use negatively impacted its land's value. Instead, IRC focused exclusively on the differing land uses and ignored the need to identify a decrease in value. Consequently, IRC failed to establish the second prong necessary for a prima facie case.

**CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the Indiana Board's final determination on all counts.