PETITIONER APPEARING PRO SE:
**MIRKO BLESICH**
St. John, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**ANDREW T. GREIN**
**JESSICA R. GASTINEAU**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

_____

# IN THE
# INDIANA TAX COURT

**FILED**

Dec 30 2015, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| MIRKO BLESICH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-1410-TA-00064 |
| | ) |
| LAKE COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION
OF THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 30, 2015**

FISHER, Senior Judge

Mirko Blesich challenges the final determination of the Indiana Board of Tax Review that valued his real property at $300,000 for the 2007 through 2010 tax years. Upon review, the Court affirms the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

Blesich owns a single-family dwelling located in St. John, Indiana. During the years at issue, the Lake County Property Tax Assessment Board of Appeals (PTABOA)

assigned Blesich's property the following assessed values: $320,000 for 2007, $320,000 for 2008, $300,900 for 2009, and $320,000 for 2010. (See Cert. Admin. R. at 4, 12, 21, 28.) Believing these values to be too high, Blesich filed four appeals with the Indiana Board on May 31, 2010.

The Indiana Board conducted a consolidated hearing on the appeals on June 9, 2014. During the hearing, the Indiana Board's administrative law judge determined that because the PTABOA's 2007 assessment represented an increase of more than 5% from the previous year's final assessed value of $300,000, the Lake County Assessor bore the burden of proving under Indiana Code § 6-1.1-15-17.2 that the assessment was correct. (See Cert. Admin. R. at 92-93.) The administrative law judge also indicated that the party who would bear the burden of proof in each of the remaining years at issue would be contingent upon the party who prevailed on the preceding year's assessment challenge; as a result, she recommended that each party make its best case for each year. (See Cert. Admin. R. at 92-93.)

To that end, both the Assessor and Blesich presented evidence in support of their positions. Specifically, the Assessor presented data relating to four properties that sold in Blesich's neighborhood in 2006. (See Cert. Admin. R. at 82-86, 99-100.) The Assessor claimed that given the average sales price per square foot for these four properties, Blesich's 2007 assessment should be reduced to $311,000.[1] (See Cert. Admin. R. at 82, 99-100.) Blesich, on the other hand, presented an appraisal report that valued his property at $275,000 as of March 9, 2012. (See Cert. Admin. R. at 60-77, 123.) Blesich also presented evidence to show the sales prices per square foot of three properties on

---

[1] The Assessor provided no evidence or argument with respect to the assessed values for the other years at issue. (See Cert. Admin. R. at 114, 117-18, 126-27.)

his street, which he argued were more comparable to his property than the properties that were offered by the Assessor. (See Cert. Admin. R. at 59, 78, 103-04.) Blesich maintained that this evidence demonstrated that his property should have been assessed at $270,000 for 2007, $248,500 for 2008, $257,000 for 2009, and $260,000 for 2010. (See, e.g., Cert. Admin. R. at 2, 10, 19, 26, 107.)

On September 4, 2014, the Indiana Board issued a final determination in the matter. In that final determination, the Indiana Board held that while the Assessor bore the burden of proving that the assessed values were correct for all four of the years at issue, she failed to satisfy that burden because she failed to demonstrate how the properties in her sales data were comparable to Blesich's property. (See Cert. Admin. R. at 47-50 ¶¶ 16, 17(c), 18(a)-(d).) The Indiana Board then explained that while Blesich had an opportunity under Indiana Code § 6-1.1-15-17.2 to present evidence to show what the proper assessments should have been, his evidentiary presentation suffered from the same infirmity as the Assessor's: in presenting his sales data, he too failed to demonstrate how the properties were comparable to his. (See Cert. Admin. R. at 47-49 ¶¶ 15, 17(f).) Moreover, the Indiana Board explained that Blesich's appraisal carried no weight because it was dated March 9, 2012, which was too far removed from any of the valuation dates at issue. (See Cert. Admin. R. at 49 ¶ 17(g).) Accordingly, the Indiana Board ordered Blesich's 2007 through 2010 assessments to revert to the property's 2006 assessed value of $300,000. (Cert. Admin. R. at 47 ¶ 15, 50 ¶ 19 (both referring to IND. CODE § 6-1.1-15-17.2(b) (2014) (explaining that when neither party's evidence proves what the correct assessment should be, the assessed value reverts to the previous year's final assessed value)).)

3

On October 8, 2014, Blesich initiated this original tax appeal. The Court heard oral argument on September 16, 2015. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). The Court will reverse an Indiana Board final determination if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2015).

## ANALYSIS

On appeal, Blesich argues that the Indiana Board erred when it determined that his evidence did not support his claim that the assessed value of his property was less than $300,000.[2] (Pet'r Br. Real Estate Tax Appeal ("Pet'r Br.") at 2-3; Oral Arg. Tr. at 7-8.) The Court disagrees.

## Blesich's Sales Data

During the Indiana Board hearing, Blesich presented information indicating that three properties located on his street sold for less per square foot than what his property was assessed at per square foot. (See generally Cert. Admin. R. at 59, 78.) With respect to these properties, Blesich generally provided their addresses, sale dates, square

---

[2] While Blesich also initially complained that he had been prejudiced by the fact that the Indiana Board failed to conduct its administrative hearing and issue its final determination in a timely manner, he subsequently withdrew that complaint from the Court's consideration. (Compare Pet'r Br. Real Estate Tax Appeal at 3 with Pet'r Resp. Resp't Br Real Estate Tax Appeal at 6-7.)

footages, and, in a couple instances, a written statement that "[this house] has a finished basement" or "[t]his house . . . [has] 4 bedrooms and a larger garage." (<u>See</u> Cert. Admin. R. at 59.) Blesich provided no other comparison of these properties to his own. (<u>See</u> Cert. Admin. R. at 59, 87-129.)

This Court has repeatedly reminded litigants that when they present evidence to the Indiana Board, it is their duty to walk the Indiana Board through <u>every element of their analysis.</u> <u>See, e.g.</u>, <u>Indianapolis Racquet Club, Inc. v. Washington Twp. Assessor</u>, 802 N.E.2d 1018, 1022 (Ind. Tax Ct. 2004), <u>review denied</u>. Thus, litigants must provide specific reasons why they believe a property is comparable or how any differences might impact their value. <u>See</u> <u>Lacy Diversified Indus., Ltd. v. Dep't of Local Gov't Fin.</u>, 799 N.E.2d 1215, 1221 (Ind. Tax Ct. 2003). General statements that another property is "similar" or "comparable" simply because it is on the same street are nothing more than conclusions. Conclusory statements do not constitute probative evidence. <u>Whitley Prods., Inc. v State Bd. of Tax Comm'rs</u>, 704 N.E.2d 1113, 1119 (Ind. Tax Ct. 1998), <u>review denied</u>. Rather, Blesich was required to explain to the Indiana Board the characteristics of his own property, how those characteristics compared to those of the other properties, and how any differences in any of their characteristics affected their values. <u>See</u> <u>Long v. Wayne Twp. Assessor</u>, 821 N.E.2d 466, 470-71 (Ind. Tax Ct. 2005), <u>review denied</u>. Because the administrative record indicates that no such explanation was made, the Indiana Board did not err when it determined that Blesich's sales data was not probative.

5

**Blesich's Appraisal**

Indiana's assessment regulations provided that the 2007, 2008, and 2009 assessments were to reflect a property's value as of January 1, 2006, 2007, and 2008. See 50 IND. ADMIN. CODE 21-3-3(b) (2007) (see http://www.in.gov/legislative/iac/) (indicating that prior to 2010, a property's March 1 assessment was to reflect a property's market value-in-use on January 1 of the preceding year) (repealed 2010). In 2010, however, a property was to be valued as of its March 1 assessment date. See 50 IND. ADMIN. CODE 27-5-2(c) (2010) (see http://www.in.gov/legislative/iac/) (indicating that in 2010, property valuation and assessment dates were the same (i.e., March 1)). Consequently, Blesich's appraisal, which valued his property at $275,000 as of March 9, 2012, had no bearing on the 2007 through 2010 assessments unless it was accompanied by some explanation as to how its value related back. See O'Donnell v. Dep't of Local Gov't Fin., 854 N.E.2d 90, 95 (Ind. Tax Ct. 2006).

On appeal, Blesich essentially maintains that no such explanation was needed: the Indiana Board should have made the reasonable inference that if his property was valued at $275,000 in 2012, it would have been even less during the assessment years at issue, which were part of "one of the . . . biggest depressed periods [in] real estate property values" in the United States on record. (See Oral Arg. Tr. at 8-9, 12-13; Pet'r Br. at 2.) As previously noted, however, it was Blesich's duty to walk the Indiana Board through every element of his analysis. Therefore, Blesich was required to trend his 2012 appraisal back to a 2006, 2007, 2008, 2009, and/or a 2010 value. Because he did not, (see Cert. Admin. R. at 57-79, 87-129), the Indiana Board properly determined that the appraisal carried no weight.

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination in this matter is AFFIRMED.