PETITIONERS APPEARING PRO SE:
**DAVID A. GERTZ**
Hebron, IN

**NICHELLE L. GERTZ**
Hebron, IN

ATTORNEYS FOR RESPONDENT:
**NICHOLAS M. BRADY**
LEWIS WAGNER & TRIMBLE
Indianapolis, IN

**MARK E. GIAQUINTA**
GIAQUINTA LAW OFFICES LLC
Fort Wayne, IN



FILED
Dec 22 2025, 2:14 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| DAVID A. and NICHELLE L. GERTZ, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No. 24T-TA-00013 |
| | ) | |
| PORTER COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 22, 2025**

MCADAM, J.

This Court has long held that each tax year stands alone. *See Marinov v. Tippecanoe Cnty. Assessor*, 119 N.E.3d 1152, 1155 (Ind. Tax Ct. 2019). As a result, the appeal of one year's property tax assessment generally does not permit a taxpayer to raise claims pertaining to another year's assessment. Here, the taxpayers, however, wish to stretch the procedural mechanism of the property tax appeal beyond its boundaries, seeking to correct a litany of alleged errors for years going back as far as

1

2012. But the review undertaken by Indiana Board of Tax Review and by this Court is circumscribed. Absent the identification of a viable legal path permitting challenges to prior year assessments, which the taxpayers have not done here, the Court is unable to provide relief for prior years. Finding no reversible error, the Court affirms the Board's final determination and its reversion to the previous year's assessed value.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Petitioners David Gertz and Nichelle Gertz's[1] Hebron, Indiana, property consists of a 4,106 square foot single-family residence and a pole barn situated on just over eleven acres of land. For the 2022 tax year, the Porter County Assessor valued the property at $44,300 for the land and $444,100 for the improvements for a total of $488,400, an increase from the previous year's value of $378,700, a value upon which the parties agreed in a settlement of the Gertzes' 2021 tax appeal. (*See* Cert. Admin. R. at 160, 2921.)

Finding the value to be too high, the Gertzes sought review with the Porter County Property Tax Assessment Board of Appeals (the "PTABOA") on May 22, 2022. When the PTABOA failed to hold a hearing within the required one hundred and eighty (180) days, the Gertzes appealed directly to the Indiana Board of Tax Review pursuant to statute.

The Indiana Board held a telephonic hearing on the merits, during which Gertz, the real estate director of the Assessor's office, and a deputy assessor testified. At the hearing before the Indiana Board, the Assessor bore the burden of proof because the

---

[1] Petitioner Nichelle Gertz has not briefed the merits of this case, nor has she joined in David Gertz's briefs. At the same time, she has not objected to his briefs either. Accordingly, the singular usage of "Gertz" shall refer to David Gertz.

assessment had increased by more than 5% over the prior year and so presented first. To meet her burden, the Assessor presented an appraisal report that used the sales comparison approach to estimate the Gertzes' property value at $490,000 as of January 1, 2022. The Board admitted the appraisal into evidence over objections that it failed to represent the true tax value of the land-in-use and that two of the three comparable sales were outside of the Gertzes' district.

In response, Gertz testified to certain deficiencies in his property that he asserted were left unaddressed in the report after being shared with the appraiser. He claimed that the Porter County 2021 ratio study excluded thirty sales in the neighborhood that would have decreased the study's results.

Gertz also submitted Form 11 Notices of Assessment for his property for various years spanning from 2003 through 2023. For other Porter County properties, he submitted 1,950 Form 11 Notices for 2021 and 234 Form 11 Notices for 2022. The Board admitted the Form 11 Notices into evidence over the Assessor's objection.

Before a final determination was issued, Gertz asked for a preliminary injunction to stop the Assessor's use of certain year's trending factors for "previous & future years proven corrupted." (Cert. Admin. R. at 32–33.) Gertz's motion asserted in part that the Porter County ratio study (1) included sales of properties with land types alleged to have been improperly changed and (2) improperly excluded thirty sales. (*See* Cert. Admin. R. at 37–38, 40.) The Board denied the motion.

In its final determination, the Board determined that the Assessor failed to meet her burden of proof and that the totality of the evidence did not support a value for 2022. As a result, the Board ordered the 2022 assessment to be reverted to the 2021

assessment pursuant to Indiana Code § 6-1.1-15-20 and reduced the 2022 assessment to $378,700. The Board's decision was based on its determination that the Assessor's appraisal was not probative evidence of the property's value since it did not account for differences in assessments of the property's agricultural land and the one-acre homesite. The Board also determined the Gertzes had not made a prima facie case for relief. It reasoned that, instead, they attacked the methodology used to develop the assessment, testified to several deficiencies with the property without quantifying the effects on value, and provided conflicting evidence as to the size of a hole that could have made a non-tillable classification appropriate. Addressing what it characterized as a challenge to the uniformity and equality of the assessment, the Board also found that the Gertzes had not provided a statistically reliable sample of properties or reliable market data showing the property's value.

Following the Board's decision, Gertz requested a rehearing, seeking an amendment to the property's class code and a correction of total assessed value to $377,498. On rehearing, the Board found the totality of the evidence was still insufficient to establish a value for the property and reaffirmed its final determination regarding the assessment but revised its finding regarding the amount of non-tillable land.

The Gertzes then initiated this original tax appeal, which the Court has taken under advisement after oral argument.

**STANDARD OF REVIEW**

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures

4

Act. *Compare* IND. CODE § 33-26-6-6(e) (2024), *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6, a party seeking to overturn a final determination of the Board bears the burden of demonstrating its invalidity. IND. CODE § 33-26-6-6(b). Consequently, the Gertzes must demonstrate that the Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. *See* IND. CODE § 33-26-6-6(e)(1)–(5).

## DISCUSSION

On appeal, Gertz asserts the Board committed various errors, some of which he has already argued before the Board and this Court. Because of the volume and breadth of his claims, the Court will group various claims together and address them serially.[2]

Gertz ostensibly makes two types of claims. First, he makes a bevy of claims concerning the Board's resolution of his appeal. Tangential to these claims, but central to his case, Gertz requests certain retroactive amendments of his assessments for years as far back as 2012. Second, he asks this Court to order an equalization adjustment and to order Porter County to change how it conducts its ratio study and market trending calculations. The Court finds that Gertz fails on all accounts.

---

[2] In the "Statement of Case" section of his initial brief, Gertz also compiles several objections, "clarifications," and "responses" to the Board's Final Determination. (*See, e.g.*, Pet'r's Br. at 8 ("Clarification to ¶ 31").) To the extent that the contentions made therein are informative to his arguments, the Court addresses them alongside his claims as necessary.

**I. The 2022 Assessment and Relief from the Board's Final Determination**

Gertz raises a host of challenges to the Board's final determination. Many of Gertz's arguments concerning these alleged errors, though, are undeveloped, and the Court finds others difficult to understand. The Court addresses each contention successively and attempts, in instances where Gertz has interwoven concerns, to separate (1) procedural components, like how the Board conducted the proceedings and maintained the record for appeal, from (2) their non-procedural counterparts, like the validity of the final determination and conclusions therein in light of the evidence properly before the Board. Gertz has not shown the Board to have committed reversible error as a procedural matter nor in its findings concerning the property's assessed value.

**A. Gertz has not shown the Board committed reversible error with respect to matters of procedure**

**i. Gertz has not shown he raised the issue of needing additional time at the hearing on the merits for the Board's consideration**

Gertz objects to the Board's finding that he waived "claims that could arise out of" the thousands of pages of exhibits submitted into evidence but not "meaningfully address[ed]" by him. (Cert. Admin. R. at 3053 (Final Determination ¶ 24); *see* Pet'r's Br. at 5 ("Objection to ¶24").) He argues that the Board did not provide adequate time for him to discuss all exhibits individually. (Pet'r's Br. at 5 ("Objection to ¶24").) Despite his broad contention that other exhibits went undiscussed, however, he specifically mentions at any length only a single exhibit that he was unable to discuss at the hearing on the merits. (*See* Pet'r's Br. at 16 (discussing Petitioner Exhibit 47).)

6

Gertz's claim must fail as he has waived it for failure to raise the issue before the Board. At the conclusion of his presentation at the hearing, Gertz declined to discuss any additional evidence when provided the opportunity to do so by the administrative law judge. (*See* Cert. Admin. R. at 3224 (responding "I think that should be good for . . . now" when asked if there was "[a]nything else").) Gertz has thus waived the issue. When a taxpayer fails to raise an issue at the administrative level, it cannot be considered on appeal. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 220 (Ind. Tax Ct. 2000), *review denied*.

### ii. Gertz has not shown that the Board improperly disregarded materials referenced in Gertz's "Motion for Preliminary Injunction"

Gertz claims the Board erred by failing to consider the "'Factual Background' information" included in the Motion for Preliminary Injunction he filed after the hearing on the merits. (Pet'r's Br. at 1, 3–4.) In its final determination, the Board denied the motion, finding that it lacked authority to grant the variety of relief sought therein. (*See* Cert. Admin. R. at 3052–53.) On appeal, Gertz states that he intended for the Board to consider the additional exhibits included in the motion as part of the administrative record.[3] (Pet'r's Br. at 4.)

The Court interprets Gertz's claim as a request to have the exhibits to the Motion for Preliminary Injunction be included in the administrative record. Throughout his

---

[3] Gertz explains that he filed the motion for preliminary injunction with the Board with the intention that the Board would forward it to the Tax Court. (Pet'r's Br. at 4.) He states that "there is no longer need for the Tax Court to rule on the merits claimed in this preliminary injunction, as was previously requested, but only for the considerations of the claims on record cited to the timely served exhibits." (Pet'r's Br. at 5.)

briefing, Gertz directs the Court to portions of the motion and the evidence he asserts the Board improperly disregarded to support this claim. (*E.g.*, Pet'r's Br. at 7 (discussing Petitioner Exhibit 4).)

To the extent that the Board disregarded evidence not discussed or admitted at the hearing, the Court finds no error. Indiana Code § 6-1.1-15-4(j) requires the Board to base its final determination "exclusively upon the evidence on the record in the proceeding and on matters officially noticed in the proceeding." *117 Republic Ltd. P'ship v. Brown Twp. Assessor*, 851 N.E.2d 399, 401 (Ind. Tax Ct. 2006) (quoting previous version of statute). In its administrative regulations, the Board expressly states that it does not accept evidence offered after the evidentiary hearing unless the evidence is requested by the administrative law judge. *See* 52 IND. ADMIN. CODE 4-6-15 (2020) ("No post-hearing evidence will be accepted unless it is requested by the administrative law judge or the board."). Gertz has not pointed to any law or authority contradicting the Board's rule or calling it into question. Nor has Gertz demonstrated that the Board abused its discretion or acted contrary to its rule as the record reveals that Gertz filed his motion for preliminary injunction on January 18, 2024, over four months after the Board held its hearing on the merits. (*Compare* Cert. Admin. R. at 32, *with* Cert. Admin. R. at 3165.)

### iii. Gertz has not shown that the Board erred in declining to impose sanctions on the Assessor

Gertz asserts that the Board erred in refusing to impose sanctions on the Assessor in two instances. First, Gertz contends that the Board should have sanctioned the Assessor for failing to fully respond to Gertz's request for discovery. (Pet'r's Br. at

8

3.) Specifically, Gertz argues that the Assessor did not provide the "critical data used to determine the current rates" in the Porter County land order that he requested during discovery. (Pet'r's Br. at 3.) Second, Gertz contends that the Board should have sanctioned the Assessor because the Assessor's appraiser did not testify at the hearing on the merits despite being named on the Assessor's list of witnesses. (Pet'r's Br. at 14–15.) Gertz claims that the Assessor's failure to call the witness deprived Gertz of the opportunity to discuss the Assessor's appraisal with the person who prepared it. (Pet'r's Br. at 11–15.)

Sanctions related to Gertz's Request for Discovery. Concerning the first claim, the Court finds no reason to disturb the Board's decision regarding sanctions because sanctions only apply to violations of discovery orders under the Board's rules. Gertz rested his claim for sanctions at the administrative level on the Board's administrative regulations. (Cert. Admin. R. at 3223 (citing 52 IND. ADMIN. CODE 4-8-7).) The Board's rule states in relevant part that "the board may order sanctions" upon a finding "that a party has failed to comply with a discovery order." 52 IND. ADMIN. CODE 4-8-7(a) (2020). Gertz does not identify, nor does the record reveal, any discovery order directed at the Assessor or a related finding that a violation of such an order occurred. In the absence of a ruling or discovery order on the motion, the rule did not apply and the Board appears to have been without authority to issue sanctions under 52 Indiana Administrative Code 4-8-7.

Even so, as the Board found, Gertz did not identify the basis for his request to the Board. The Board denied Gertz's request for sanctions, finding that the Gertzes "did not demonstrate exactly what information they requested or what they failed to receive."

9

(*See* Cert. Admin. R. at 3052.) The record confirms the Board's finding. At the hearing on the merits, Gertz moved for sanctions against the Respondent, stating

> to . . . further . . . comply with our discovery request that is now incomplete. This is important because non-privileged information that should have been openly available to the public upon request, we are limited to move further with this hearing, without this information, this is in regards to the land. . . . I don't think he's done what he should have done to comply to get us the data for the land. And I'm sure . . . that's easy, they could send it over and I would have worked with them, but they've refused to do so. And then when they got the information which was useless to me without the data, they just try to enter it in as their own exhibits which you know, yeah, they did give me a copy, but you know, it was at the last minute, I couldn't do anything with it because I didn't have time to review it, so I want that information. So, if you can do something to oversee that, or sanction him for that information, I'd appreciate it.

(Cert. Admin. R. at 3223–24.) At no point does Gertz identify which specific request for discovery the Assessor failed to comply with or what information he did not receive. His request for sanctions is simply a general statement that the Assessor's discovery response was "incomplete." (Cert. Admin. R. at 3223.)

Gertz maintains that he did identify the specific discovery that was not fulfilled by the Assessor at an earlier part of the hearing. (Pet'r's Br. at 3.) He points to an objection he made to the entry of certain exhibits where he describes information to a land order that he never received. (Pet'r's Br. at 3 (citing Cert. Admin. R. at 3185).) The record reveals that Gertz filed a "Motion for Discovery" on August 14, 2023, ostensibly seeking clarification from the Assessor of residential land and improvement valuations used in Boone Township's 2022 tax year. (*See* Cert. Admin. R. at 18.) The Court notes that the motion in part asks the Assessor for "full access" to the 2022 Porter County Land Order.[4] (Cert. Admin. R. at 19.)

---

[4] Gertz seems to have sought, but not received, certain data the Assessor used in determining rates expressed in the land order. (*See* Pet'r's Br. at 3.) To remedy the alleged refusal, he

The Court disagrees that this earlier reference was sufficient to notify the Board of the basis for his later request for sanctions. Gertz does not refer to this earlier discussion as part of his request for sanctions, nor does he repeat any of the details of that discussion. It was not reasonable for Gertz to expect the Board to infer that the one related to the other without expressly making the connection. There was nothing to prevent him from restating the relevant details at the time he requested sanctions.

Sanctions related to the Assessor's Appraiser not testifying at the hearing on the merits. Concerning the second claim of error, the Court notes that the cited regulation permits the issuance of sanctions for a witness's failure to attend a hearing but does not require them. *See* 52 IND. ADMIN. CODE 4-8-7(c) (2020). Before the Board, Gertz relied on the Board's administrative regulations to support his request for sanctions. (Cert. Admin. R. at 3121 (citing 52 IND. ADMIN. CODE 4-8-7(c)).) The Board's rule states in relevant part that the Board "may issue sanctions if a party or party witness fails to attend a scheduled hearing . . . even in the absence of a subpoena." 52 IND. ADMIN. CODE 4-8-7(c). The rule places the question of sanctions fully within the discretion of the Board. While the Court is sympathetic to the fact that Gertz was unable to cross-examine the appraiser who conducted the Assessor's appraisal, Gertz could have ensured the appraiser's presence at the initial hearing by requesting a subpoena. *See* 52 IND. ADMIN. CODE 4-8-6 (2020). He did not, and the Assessor's listing of the appraiser

---

further asks the Court to order the Department of Local Government Finance ("DLGF") to provide the data "used in [Boone] Township's land order," or, in the alternative, to remand on this issue so that the Board can order the Assessor to do so. (Pet'r's Br. at 44; *see* Pet. at 18 ¶ 55.) Importantly, DLGF is not a party to this appeal, nor has Gertz explained how the Court would have jurisdiction over such a claim or authority to order DLGF in this case to do what Gertz asks. Moreover, Gertz does not argue or explain how he was prejudiced by not having received the data and, in any event, the record appears to contain the relevant data. (*See* Cert. Admin. R. at 2985–3013.)

on her witness list did not relieve his obligation to do so had he wished to ensure examination of the appraiser. While the Board's rules do require parties to exchange lists of witnesses, *see* 52 IND. ADMIN. CODE 4-8-1(b)(2) (2020), Gertz has not provided any authority imposing a mandatory obligation on parties to call all listed witnesses to testify at a Board hearing.

### iv.   Gertz has not shown that the Board erred with respect to rearranging specific exhibits

Gertz claims that the Board ignored Petitioner Exhibit 27 and that the Board caused confusion by rearranging exhibits at the rehearing. (Pet'r's Br. at 19.) To support his claim that the Board ignored the evidence, Gertz cites a statement by the Board's Chairman at the rehearing that a portion of Petitioner Exhibit 27 was missing from the record. (*See* Pet'r's Br. at 19 (citing Cert. Admin. R. at 3253–55).) Gertz concedes, though, that the certified administrative record contains the exhibit, albeit in a different, resubmitted format.[5] (*See* Pet'r's Br. at 9, 20; Cert. Admin. R. at 2676–726 (exhibit).)

The Court is unable to discern the nature of Gertz's claim as to this matter, and his failure to explain his concerns is fatal to its success. To the extent he is arguing that the reorganization of the evidence or the resubmitted version of the exhibit inhibited his ability to make some part of his case, he neither explains what the exhibit purported to show in its original format nor explains the differences between the unaltered and altered versions. He fails to walk the Court through the evidentiary support he lost due

---

[5] The record shows that the Board ordered and again accepted the exhibit into evidence after the September 5, 2025 rehearing. Gertz resubmitted "paper, paginated copies" of Petitioner Exhibit 27, which the Board listed as "Ex. 27.1: PRCs SDFs, Excerpts from Real Property Assessments Guidelines, and SDF instructions (51 pages)" and "Ex. 27.2: GIS maps, SDFs, PRCs, website printouts, and list of sales excluded from 2022 Porter County ratio study (96 pages)." (Cert. Admin. R. at 3159, 3161.)

to the rearrangement of the exhibit. "It is the taxpayer's duty to walk the Court through every element of [its] analysis." *Clark v. Dep't of Local Gov't Fin.,* 779 N.E.2d 1277, 1282 n.4 (Ind. Tax Ct. 2002). If the Board did ignore the exhibit, Gertz has not clearly explained how the exhibit, in supporting his claims, would lead to a conclusion different than the one reached by the Board.

### v. Gertz has not shown that the Board erred in its preservation and production of the record on appeal

Gertz claims that the record on appeal lacks certain emails between the parties, tendered exhibits, "copies of the original flash drive media exhibits," and audio recordings of the hearing on the merits and rehearing proceedings. (Pet'r's Br. at 27.) However, Gertz does not identify or explain which emails or exhibits were admitted and thus were improperly excluded from the certified administrative record on appeal. The Board's administrative regulations mandate that evidence be exchanged and that copies of those materials "become part of the administrative record *only if* admitted into evidence by the board or administrative law judge." 52 IND. ADMIN CODE 4-8-1(e) (emphasis added). Additionally, audio recordings of the administrative hearings are neither required nor necessary considering that transcripts were prepared. (*See* IND. CODE § 6-1.1-15-6(b)(7) (2020); Cert. Admin. R., Certification of Official Record (noting the preparation and inclusion in the certified record of "Transcripts of the audio recordings of the administrative hearing and the administrative rehearing held in this matter").) Moreover, Gertz does not explain how the missing items affect his claims or impair his case, and, consequently, the Court cannot find any prejudice that might have occurred if the evidence is absent. As the Court has said, "[i]t is the taxpayer's duty to

13

walk the Court through every element of [its] analysis." *Clark*, 779 N.E.2d at 1282 n.4. Without more, the Court finds no error to have occurred.

### vi. Gertz does not demonstrate that the Court should consider Petitioner Exhibit 7

Gertz requests that the Court "allow [the] originally tendered exhibit #7 to be reviewed pursuant to [Indiana Code] § 33-26-6-5 et al." as "further proof" of error by the Assessor. (Pet'r's Br. at 8.) Though Petitioner Exhibit 7 was submitted prior to the hearing on the merits, the record reveals Gertz never offered it into evidence.[6] (*See* Cert. Admin. R. at 3048 n.2.) Gertz claims that Petitioner Exhibit 7 demonstrates the failures of the Assessor's appraisal to consider comparable properties. (*See* Pet'r's Br. at 7.) He raises his claim in his "Response to ¶ 30" of the Board's final determination, which notes Gertz's contention that the Assessor's 2021 ratio study was flawed because it excluded approximately thirty neighborhood sales. (Pet'r's Br. at 6 (citing Cert. Admin. R. at 2816–22).) The Court understands Gertz's request as asking the Court to consider an exhibit outside of the record in its review of the Board's final determination, pursuant to Indiana Code § 33-26-6-5.

Even if Petitioner Exhibit 7 had been produced for consideration, Gertz's request must be denied because he has not demonstrated that it satisfies the statutory requirements for receiving evidence on appeal outside the administrative record. "When a litigant fails to present evidence to the Indiana Board, the Court may not consider that evidence on appeal" except under certain exceptions provided by Indiana Code § 33-26-6-5. *Prop. Dev. Co. Four, LLC v. Grant Cnty. Assessor*, 42 N.E.3d 182, 184 &

---

[6] Gertz has not offered the exhibit to the Court now or provided citations to the record as to its location.

n.1 (Ind. Tax Ct. 2015). To do so, Gertz must demonstrate that certain exceptions provided by Indiana Code § 33-26-6-5(b) apply, which he does not. Specifically, Gertz does not show that the exhibit "relates to the validity of the determination at the time it was taken" or that it "is needed to decide disputed issues regarding" either the "[i]mproper constitution as a decision making body or grounds for disqualification of those taking the agency action" or the "[u]nlawfulness of procedure or decision making process." IND. CODE § 33-26-6-5(b) (2007).

**B. Gertz has not shown error in the Board's final determination with respect to the property's assessed value**

Having addressed the procedural aspects of the taxpayer's challenge, the Court turns to what remains. In short, Gertz has not shown that the Board erred in reverting the 2022 assessment to the property's 2021 assessed value. Furthermore, the Court declines to provide relief for previous years' assessments for reasons expressed below.

**i. Gertz has not shown the Board erred in finding the property's true tax value was not proven and reverting its assessed value to the prior year**

To the extent that Gertz challenges the Board's ultimate conclusion that there was insufficient evidence to ascertain the true tax value of his property for 2022, the Court finds that he has failed to meet his burden on appeal. The party challenging a final determination bears the burden of demonstrating its invalidity. *Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005), *trans. denied.* And a party "must walk the Board, and this Court, through every element of their analyses." *Garrett LLC v. Noble Cnty. Assessor*, 112 N.E.3d 1168, 1174 (Ind. Tax Ct. 2018).

15

In this case, Gertz has not shown that the evidence requires a different conclusion than the one reached by the Board. Nor has he demonstrated that the Board incorrectly found that neither party made the necessary showing of true tax value and that the assessed value should be reverted to the prior year. At no point does Gertz clearly articulate to the Court an alternative true tax value that the Board should have selected or, more importantly, show how the record evidence establishes that value. When asked by the Court what value he thought was the correct value, Gertz did not articulate one but only mentioned that the value that "came out" after he "broke down the land types" and "plugged in [a] base rate for agricultural land" "was about $1,500 or some odd dollars lower than what they had it set at." (Oral Arg. Transcript at 7.) Gertz does not demonstrate how the evidence supports that number or walk the Court through his calculations. Accordingly, he has not met his burden on appeal.

### ii. Gertz has not shown error concerning the 2022 assessment with respect to the property's 0.41 acres of non-tillable land, agricultural land types, class code, or soil identifications

Gertz insists that his 2022 property assessment should be altered because of what he views to be errors in certain values and associated entries relating to portions of his land. (*See* Pet'r's Br. at 18–19, 41.) On rehearing, the Board determined that the 0.41 acres of Gertz's land was misclassified as tillable land and should be classified as non-tillable land. (*See* Cert. Admin. R. at 3162–63.) Gertz argues that this misclassification, along with other incorrect class codes and soil identifications, increased his assessments by approximately $1,500 in 2022 and by various amounts for the other years. (Oral Arg. Transcript at 7; Pet'r's Br. at 41–43.) The Court

16

understands Gertz's requests as a plea to order the recalculation of his assessment using a corrected classification for his land.

Gertz's claim falls short, however, since he has not shown that the land's misclassification resulted in an assessment unreflective of his property's true tax value. Though Gertz alleges errors involving his land's non-tillable acreage, he has not shown that they caused the Assessor to reach an incorrect market value-in-use. Proposing a different land classification, an alternative acreage amount, an alternate class code, or application of a different influence deduction, without more, "focuse[s] strictly on the Assessor's methodology." *Eckerling v. Wayne Twp. Assessor*, 841 N.E.2d 674, 678 (Ind. Tax Ct. 2006). Attacking the methodologies used in the assessment alone is insufficient, since Gertz must still present evidence establishing the property's market value-in-use in 2022. *See Piotrowski BK #5643, LLC v. Shelby Cnty. Assessor*, 177 N.E.3d 127, 132 (Ind. Tax Ct. 2021) (quoting *P/A Builders & Developers, LLC v. Jennings Cnty. Assessor*, 842 N.E.2d 899, 900–01 (Ind. Tax Ct. 2006)). "[W]hen a taxpayer challenges its assessment . . . , it cannot merely argue form over substance." *Id.* "Rather, the taxpayer must demonstrate that the assessed value as determined by the assessing official does not accurately reflect the property's market value-in-use." *Id.* Gertz has not presented and explained probative evidence establishing the property's market value-in-use. In the absence of this demonstration, the Court declines to provide relief on this basis.

### iii. Gertz has not shown error concerning previous years' assessments with respect to the property's 0.41 acres of non-tillable land, agricultural land type, class code, or soil identifications

Gertz further seeks to lower the tax valuation for previous years by "correcting" assessments from 2012 to 2021.[7] (*See* Pet'r's Br. at 41–43.) According to him, land on his property was erroneously reclassified in 2012, and certain agricultural land types, acreage portions, and soil identification values were changed in the process. (*See* Pet'r's Br. at 19; Pet'r's Reply Br. at 4–5; Cert. Admin. R. at 3217 (testimony by Gertz concerning a 2012 photo depicting crops on his property that, by his estimation, would have deterred a reclassification event).) Such "corrections," if made now, would in Gertz's mind alter the assessed value of the property for those years retroactively, and Gertz believes the Board erred by not revising these values as part of this appeal. (*See* Pet'r's Br. at 18 ("These agricultural land type 5 corrections should have been made in [the Board's] [] determination as they were accurately explained and [supported by] exhibits at the hearing [on the merits]."); Pet'r's Br. at 27 (arguing the Board denied land assessment corrections and instead focused on what he calls "the minimal allowable relief" under Indiana Code § 6-1.1-15-20); *see also* Pet'r's Br. at 41–42.)

Gertz's claim, however, fails for two reasons. First, he does not develop an argument or show how the Assessor reached an incorrect market value-in-use. Second, he does not provide authority, statutory or otherwise, requiring corrections be made

---

[7] The Gertzes have already appealed several assessments from this span of years, including an appeal of the 2019 assessment resolved by this Court, and appeals of assessments from 2021, 2018, 2017, and 2013, which were resolved by agreement. (*See Gertz v. Porter Cnty. Assessor*, 187 N.E.3d 978, 980 (Ind. Tax Ct. 2022); *see also* Cert. Admin. R. at 2921.)

retroactively or extending relief beyond that which is related to the assessment specifically challenged in the appeal.

Gertz has not shown an incorrect market value-in-use. While he contends that certain corrections to agricultural land types and class codes were necessary in years 2012 to 2021 for those years' assessments, Gertz does not show how the values he contends to be incorrect resulted in assessments unreflective of his property's true tax value *for each assessment year he wishes to amend*. Instead, Gertz points to the 0.41 acres of non-tillable land as well as agricultural land types, soil identifications, and class codes with which he disagrees and contends by reference to previous years' property record cards that the values, changed after 2012, do not match those found in property record cards prior to the reclassification. (*See* Pet'r's Br. at 11–12, 19 (citing Cert. Admin. R. at 74–75, 78–79, 2898–901), 21, 28.) According to Gertz, they should thus be reverted. As explained above in Subsection I.B.ii. with respect to the 2022 assessment, however, Gertz must still establish the property's market value-in-use for each of the years he challenges or otherwise show how the Assessor reached an incorrect market value-in-use. *See Piotrowski BK #5643, LLC*, 177 N.E.3d at 132–33. The evidence of the non-tillable acreage in 2022 and previous property record cards is insufficient in that respect.[8] Since he has not made these demonstrations, Gertz's claim fails.

Gertz has not provided authority requiring or permitting retroactive relief. Even if he had shown that his proposed corrections would impact the corresponding true tax

---

[8] Appraisals from years prior to the assessment year, without more, also do not establish the property's market value-in-use for those assessment years, considering that "each assessment year stands alone." *Marinov*, 119 N.E.3d at 1155; *see Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 805 n.14 (Ind. Tax Ct. 1998) ("Where a taxpayer challenges an assessment, the resolution of that challenge does not depend on how the property was previously assessed.").

value by establishing the property's market value-in-use in those years, Gertz additionally fails to chart a path or identify a legal basis from which the Court can presently review or order retroactive reversions of these values within the context of the appeal of the 2022 assessment now before it.

In support of his request that this Court now alter pre-2022 real property assessments, Gertz asserts that retroactive corrections for all years since 2012 are "necessary to comply with" Indiana Code § 6-1.1-4-13(c)(1) and (c)(2), as well as the "2011 Real Property Guidelines." (Pet'r's Br. at 41; *see also* Pet'r's Br. at 21, 29.) He further contends that the Board's rulings denying the requested corrections in its final determination conflict with 50 Indiana Administrative Code 27-6-1. The Court finds, however, that Gertz's cited authority does not allow the relief he seeks: in each instance, the authority plainly contemplates something other than the retroactive review or reversion of property record card or agricultural land values.

*First*, Gertz's reliance on Indiana Code § 6-1.1-4-13 is inapposite since he does not show that the statute provides a path to retroactively review the values. Indiana Code § 6-1.1-4-13 (2016) concerns assessments for agricultural land, but subsections (c)(1) and (c)(2) direct the Department of Local Government Finance ("DLGF") to provide written notice of certain data and soil productivity factors, the provision of which is not at issue here and Gertz fails to actually assert was withheld. More importantly, however, he does not explain how the Section he cites provides for a remedy that addresses his concerns. He only states the corrections he seeks are "necessary to comply" with the statute. (*See* Pet'r's Br. at 41; *see also* Pet'r's Br. at 21.) Indiana Code § 6-1.1-4-13 states that "[a]ll assessing officials and the property tax

assessment board of appeals shall use the data in determining the true tax value of agricultural land." Gertz does not explain how the statute provides for a retroactive remedy for previous years not on appeal.

*Second*, Gertz cites portions of the 2011 Real Property Assessment Guidelines, which discuss Type 4 Tillable Land Subtypes 41 and 42, as well as Type 5 Nontillable Land, and provide a list of specific conditions to consider in determining that any given parcel deserves an influence factor deduction. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2008)), Ch. 2 at 89. He again does not show that this authority provides the Court with a path to retroactively review or revert the discussed values. Even assuming the Assessor selected the wrong subtype or applied the incorrect influence factor deductions in certain instances as a result, Gertz does not explain how the 2011 Guidelines, meant to be followed in determining land valuations, permit this Court's intervention in this instance or would operate to achieve the retroactive reversions he seeks. Like he does with Indiana Code § 6-1.1-4-13, Gertz makes unsupported assertions about the Guidelines and does not chart a clear course from the authority he cites to the remedy he requests. His contentions about complying with the Guidelines are not accompanied by clear argument or citations to controlling law making clear to this Court that the Guidelines themselves or any provision therein mandate reversions for years not on appeal. (*See* Pet'r's Br. at 21, 41.) Gertz has not made such a showing, and the Court cannot make it for him. *See Abraytis v. Porter Cnty. Assessor*, 220 N.E.3d 77, 81–82 (Ind. Tax Ct. 2023).

*Third*, Gertz relies on 50 Indiana Administrative Code 27-6-1, a DLGF rule

establishing the procedures and standards governing local assessing officials in the annual adjustment of assessed valuations. Yet, he does not convince the Court that this rule authorizes retroactive review or reversions of agricultural land values. Even if the record were to demonstrate prior adjustments were incorrect, Gertz fails to explain how the rule permits this Court to review and revisit adjustments from years outside the specific assessment year being appealed. The rule simply provides that (a) land used for agricultural purposes shall be adjusted consistent with the guideline methodology developed for the 2012 general reassessments of agricultural land value except in the case of determining the annual base rate and (b), in the case of portions of agricultural parcels that include land and buildings not used agriculturally, the parcels shall be adjusted by factors developed for other similar property within the geographic stratification. *See* 50 IND. ADMIN. CODE 27-6-1(a), (b). Gertz does not show how the Board's refusal to alter prior-year values conflicts with this rule, nor does he clearly chart here how the rule provides for the retrospective review of adjustments or agricultural land values for years not on appeal. He does not identify precedent or controlling law indicating that violations of the rule's requirements permit the Court to revisit different agricultural land values years after the fact. As before, Gertz has not made this showing, and the Court will not make it for him. *Abraytis*, 220 N.E.3d at 81.

Ultimately, Gertz fails to provide the Court with legal support requiring that certain classifications and values, alleged to be incorrect in previous assessments, must be corrected *if they are unrelated to the assessment currently on appeal*. Indeed, the appeal process whereby a taxpayer challenges a real property tax assessment is curtailed and only "allows taxpayers to challenge assessments made within a finite

22

period." *Gertz v. Porter Cnty. Assessor*, 187 N.E.3d 978, 984 (Ind. Tax Ct. 2022); *see also* IND. CODE § 6-1.1-15-1.1(c)–(d) (indicating that the administrative appeal process "applies only to the tax year corresponding to the tax statement or other notice of action" that the taxpayer received unless "a county official took action regarding a prior tax year, and such action is reflected for the first time in the tax statement"). As he does not demonstrate remand on such basis is appropriate, such classifications and adjustments are beyond this appeal.

C. **Gertz waives his Indiana Trial Rule 60(B) argument that he first presents on appeal, and he fails to show that either equitable doctrine he invokes applies**

Gertz makes other claims seeking retroactive relief based on equitable grounds, to which the Court now turns. Gertz asserts the Assessor committed fraud and perjury in years past, and he seeks relief from those actions as he ostensibly believes they affect various years' assessments. More specifically, Gertz contends the Assessor fraudulently concealed notice of a 2012 property reclassification and committed perjury to conceal it. Based on its review of the record, Gertz's briefing, and his oral argument before the Court, the Court understands the events as follows.

In 2012, the Assessor reclassified the agricultural land portion of the Gertzes' property to residential excess acreage, increasing the portion's assessed value and in turn the total assessed value of the property. (*See* Cert. Admin. R. at 2975, 3179.) Instead of noting "Land Reclassification," as Gertz argues should have been noted, the Gertzes' Form 11 Notice from 2012 stated "General Reassessment" as the reason for the assessment's revision. (Cert. Admin. R. at 151.) Gertz states that the Assessor did

not disclose any changes related to reclassification. (*See* Oral Arg. Transcript at 36–37.) Gertz maintains that he called the Assessor in 2013 and was told, at some point, the trending rate caused the increase in the tax liability. (Oral Arg. Transcript at 37.)

According to Gertz, the Assessor wrongly withheld notice of the reclassification when it happened in 2012 by (1) knowingly providing the Gertzes "falsified" Form 11 Notice documents that year and in subsequent years that did not indicate "land reclassification" as the reason for the revision of assessment and (2) providing perjured testimony during a proceeding before the Indiana Board in a 2019 appeal of Gertz's property. (Pet'r's Reply Br. at 5–8, 11; *see also* Pet'r's Br. at 18, 29–30; Cert. Admin. R. at 3202–03.) He asserts that the protracted concealment of the initial reason behind the revised assessment effectively prevented a timely appeal. (*See* Pet'r's Reply Br. at 7.) Gertz did appeal several assessments from 2013 to 2018 on other grounds unrelated to reclassification and settled each. (*See, e.g.*, Cert. Admin. R. at 2976; Cert. Admin. R. at 41.) Gertz maintains that if the words "land reclassification" had appeared on the 2012 Form 11 Notice, he would have appealed the issue of reclassification directly. (*See* Pet'r's Reply Br. at 7.)

As before, Gertz fails to develop his claims or convince the Court that relief aimed at remedying alleged fraud and perjury related to previous years' assessments is appropriate here. Gertz raises these issues first under Indiana Trial Rule 60(B) and then as they relate to the fraudulent concealment and equitable estoppel doctrines. The Court addresses each of these claims in turn.

Trial Rule 60(B). Gertz argues that the procedural mechanism provided in Trial Rule 60(B) allows him to pursue a claim for fraud upon the Court. (*See generally* Pet'r's

24

Reply Br.) But, having not raised it previously at the administrative level, he has waived this argument. Gertz mistakenly claims to have made an argument concerning Trial Rule 60(B) in this case. Gertz incorrectly maintains he raised his claim before the Board in a June 27, 2023 "Motion to Set a Petition for Hearing." (*See* Pet'r's Br. at 28 (citing Pet., Exs. 23, 24)). Gertz filed the June 2023 motion in the 2019 appeal, however, and not in this case. (*See* Pet., Ex. 23; *see also* Pet., Ex. 24 at 1–2.) Based on this Court's review of the administrative record, including the hearing and rehearing transcripts, Gertz did not otherwise make his argument to the Board in this case. Because issues must be presented at the administrative level before they can be considered on appeal, these arguments are waived and cannot be addressed here.[9] *See Inland Steel Co.*, 739 N.E.2d at 220. Thus, the Court declines to provide relief on these grounds.[10]

<u>Fraudulent Concealment and Equitable Estoppel.</u> Gertz next attempts to invoke the equitable doctrines of fraudulent concealment and equitable estoppel to remedy the fraud he alleges. (*See, e.g.*, Pet'r's Br. at 32.) Since he fails to chart a path showing how the doctrines apply to this case, however, his claims must fail.

Gertz asserts the equitable doctrines apply without ever specifically explaining how they operate in this case. Specifically, as a doctrine, fraudulent concealment operates to prevent a defendant from barring a plaintiff's claim by asserting the statute of limitations has run in instances where the defendant prevented the plaintiff from

---

[9] Even if the Court were to reach the merits, such arguments would likely fail for reasons similar to those the Court set forth in its Order on Petitioner's Bifurcated Fraud and Perjury Claims and Respondent's Motion to Strike, issued on April 14, 2025.

[10] The Court similarly declines Gertz's request that subpoena *duces tecum* be issued to various individuals to testify as to the Form 11 Notices found in the certified administrative record. (*See* Pet'r's Br. at 34.)

obtaining the knowledge necessary to pursue a claim. *See Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 690 (Ind. Ct. App. 2006). Likewise, Indiana law allows for tolling a period of limitations under the equitable doctrine of equitable estoppel, *see Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 383 (Ind. 2019) (citing *Perryman*, 846 N.E.2d at 690–91), but also allows the doctrine to more generally prevent a party from asserting a right that it otherwise would have had. *See Izaak Walton League of Am. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals*, 881 N.E.2d 737, 743 (Ind. Tax Ct. 2008).

In maintaining the equitable doctrines apply, however, Gertz recites general statements about the doctrines without extending his analysis of either doctrine any further. (*See* Pet'r's Br. at 32–33.) He provides assertions that the Assessor 'fraudulently' concealed information of a reclassification but he then does not go on to demonstrate, as he must, that each equitable doctrine's requisite elements were met. *See Hi-Way Dispatch, Inc. v. Indiana Dep't of State Revenue*, 756 N.E.2d 587, 599 (Ind. Tax Ct. 2001) (a party "must demonstrate how the elements of estoppel are met").

Most importantly, however, Gertz never takes the necessary next steps of extending the equitable doctrines to this case. He focuses strictly on the events of the past without explaining the effects of the alleged concealment or fraudulent actions on the 2022 assessment or how the equitable doctrines would remedy those effects. He makes no argument that a period of limitations relevant to this case should be tolled or that the Assessor should be stopped from asserting rights it otherwise would have been able to assert in this case. As such, Gertz never charts a path from the equitable

26

doctrines to relief the Court may provide in this appeal.[11] Since Gertz has not shown how "allegations concerning the Assessor's conduct . . . extend [the appeal before the Court] to preceding years," the Court is unable to afford the retroactive relief Gertz seeks. *Gertz*, 187 N.E.3d at 984–85.

## II. Orders on Equalization Adjustment, Ratio Study Calculations, and Market Trending Calculations

Taking issue with the Porter County 2021 ratio study's effect on his taxing district, Gertz seeks an equalization adjustment be applied as well as several changes related to how Porter County conducts its ratio study and market trending calculations. From what the Court understands of Gertz's argument, he makes three distinct claims. *First*, Gertz claims an equalization adjustment to all improvements in Boone Township should be made for assessment year 2022 and should be carried forward into future years. (*See* Pet'r's Br. at 10, 43–44.) *Second*, Gertz claims that his neighborhood, Neighborhood #1616 of the first tax district of Boone Township, is located in an unincorporated agricultural district and thus should not be grouped for purposes of ratio study calculations with other platted-lot developments in the tax district or with the second tax district. (*See* Pet'r's Br. at 23.) *Third*, Gertz claims that market trending for Boone Township — just the township and not Porter County entirely — should be

---

[11] Additionally, Gertz does not demonstrate that the doctrines can bring other assessments into issue besides the only assessment appealed here, the 2022 assessment. To the extent that Gertz wishes to belatedly remedy the concealment he alleges and mitigate its effects on other years' assessments, the equitable doctrines he attempts to invoke might preserve an appeal of those years' assessments were Gertz to have brought them. Such appeals are not now before the Court, however, since Gertz has only appealed in this action the 2022 assessment of his property. (*See* Cert. Admin. R. at 3–4 (Gertz's Form 130); Cert. Admin. R. at 1–2 (Gertz's Form 131).) Gertz has not appealed the assessments for the other years he attempts to challenge, and thus he cannot use equitable doctrines as a backdoor to an appeal.

permanently calculated by neighborhoods, in a fashion similar to adjacent Lake County. (*See* Pet'r's Br. at 23, 44.)

The Court holds that Gertz's claims fail because he does not sufficiently develop any of these three claims to present them for the Court's decision. He does not explain how he reached his conclusions or chart for the Court a clear legal path to resolve his claims.

Equalization Adjustment. Regarding his claim for equalization, Gertz fails to extend arguments showing that assessments within the assessing jurisdiction are non-uniform or unequal. Relying on the Assessor's 2022 appraisal and the property record card for that same year, Gertz asserts his property should receive an adjustment because, by his calculations, the 2022 market trending rate was excessive. (*See* Pet'r's Br. at 10, 22.) He also criticizes the Porter County's 2021 ratio study as being underinclusive and identifies certain sales which he maintains needed to have been included. (*See* Pet'r's Br. at 5–7, 22.) Neither of his contentions, however, demonstrates that an adjustment is necessary for property assessments to "bear the same relationship of assessed value to market value as other properties within that jurisdiction." *Thorsness v. Porter Cnty. Assessor*, 3 N.E.3d 49, 51 (Ind. Tax Ct. 2014). Gertz does not walk the Court through his calculations and analysis and relate them to the relevant legal standard. Nor does Gertz provide a legal basis from which this Court could require that an adjustment be applied on an indefinite basis. (*See* Pet'r's Br. at 10.)

Grouping of Neighborhood #1616. Regarding his claim for the separation of his neighborhood for ratio study calculations, Gertz fails for similar reasons. He does not

28

provide any probative evidence demonstrating the differences between his taxing district and the others he believes to be dissimilar. (*See* Pet'r's Br. at 23.) More importantly, however, he does not cite support for the proposition that, as it concerns ratio studies, neighborhoods without platted-lot developments should be calculated separately from their counterparts with platted-lot developments, or that the incorporation status of a neighborhood matters in those calculations. He furthermore does not identify a legal basis for this Court to order the Assessor to calculate the ratio studies in such a manner.

Market Trending for Boone Township. Gertz's claim for neighborhood grouping for market trending fares no better. He attempts to make a comparison to Lake County's market trending, but he does not show how its market trending is annually thirty to fifty percent lower than Porter County's or how it is conducted on a neighborhood basis. (*See* Pet'r's Br. at 23.) And, similar to his previous claim about ratio studies, he does not identify a legal basis to order the Assessor to segment its market trending in such a manner.

Gertz has not adequately established his claims. "It is the taxpayer's duty to walk the Court through every element of [its] analysis." *Clark,* 779 N.E.2d at 1282 n.4. The Court cannot "make a taxpayer's case for [them]." *Davidson Industries v. Indiana State Bd. of Tax Comm'rs*, 744 N.E.2d 1067, 1071 (Ind. Tax Ct. 2001) (internal quotation marks omitted).[12]

---

[12] Gertz seeks several other remedies which he does not explain at all, including orders for the allowable interest on refunds and credits for assessment decreases, to correct the square footage areas of the home in the Assessor's appraisal, and to return the property's class code to a different designation. (*See* Pet'r's Br. at 44–45.). Additionally, at several points throughout his initial brief, Gertz claims, but does not clearly explain, that the Assessor unduly "manipulated" data from previous years' appraisals. (*See* Pet'r's Br. at 24–25, 30, 36–37.) Since Gertz does

## CONCLUSION

Accordingly, the Court AFFIRMS the Board's final determination in this matter.

---

not walk the Court through any of these claims, the Court considers them waived and does not address them.